UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-228 (ESH) |
| v. | : | |
| JEFFREY S. MILLS, RODERIC L. BOLING, AND ANNA BOLING | : | |
| Defendant. | : | |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO INTRODUCE INEXTRICABLY INTERTWINED EVIDENCE, AND EVIDENCE OF OTHER ACTS PURSUANT TO FED. R. EVID. 404(b)**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits the following Supplemental Memorandum in Support of it's Motion *In Limine* to Introduce Inextricably Intertwined Evidence, and Evidence of Other Acts Pursuant to Fed.R.Evid. 404(b), and respectfully requests that its motion for an Order *in limine* to allow the introduction at trial of: (1) evidence of inextricably intertwined evidence to prove the charged offenses; and (2) evidence of other acts pursuant to Fed. R. Evid. 404(b) to prove intent, knowledge, identity, preparation, plan, background of the conspiracy, lack of mistake, motive, and modus operandi be granted.

**I.      BACKGROUND**

On February 23, 2007, the United States filed a Motion *In Limine* to Introduce Inextricably Intertwined Evidence, and Evidence of Other Acts Pursuant to Fed. R. Evid. 404(b). In this motion, the United States described the following five categories of evidence that the United States intended to introduce at trial:

(1)      Evidence of defendant Roderic Boling's and defendant Anna Boling's role in

      recording and distributing voicemails in the Summer of 2004 which concerned the installation of satellite television systems and sale of travel packages.

(2) Evidence of Roderic Boling's substantial experience and involvement, during the period of late 2003 through July of 2004, in arranging for Telephone Broadcast Company to distribute voicemail messages which marketed satellite television and travel packages.

(3) Evidence of Roderic Boling's attempt to assist Jeffrey Mills in arranging a direct mailer stock promotion campaign shortly before the distribution of the fraudulent hoax voicemails described in the indictment.

(4) Evidence of Jeffrey Mills' involvement in promoting securities with the following stock symbols: MHPD, MFLW, WFMC, VDYI, ISIC, TOTG, GTRD, and FPGR. At least one of these promotions occurred during the fraudulent voicemail scheme.

(5) Evidence of efforts by Jeffrey Mills and/or another unindicted co-conspirator to make arrangements for people to get their stories together or for people to get on the same page.

On April 10, 2007, this Court held a Pre-Trial Conference in this matter to address, among other motions, the United States' Motion to Introduce Inextricably Intertwined Evidence, and Evidence of Other Acts Pursuant to Fed. R. Evid. 404(b). At the Pre-Trial Conference, the Court ruled on the admissibility of certain evidence. However, the Court also ordered that, to the extent the Government intended to argue that the prior voicemails and stock promotions identified in the first, second and fourth categories of evidence set forth in the Government's

motion "were in any way wrongful or illegal," the Government should file a supplemental memorandum informing the Court that it intended to argue wrongfulness or illegality, and providing the Court with additional information concerning this evidence. The United States files this supplemental memorandum to comply with the Court's order.

## II.   DISCUSSION

### A.   Evidence Concerning Roderic Boling's and Anna Boling's Role in Recording and Distributing Voicemails Which Concerned the Installation of Satellite Television Systems and the Sale of Travel Packages.

In its prior Rule 404(b) motion the United States identified two categories of evidence relating to Anna Boling's and Roderic Boling's role in recording and distributing voicemails concerning the installation of Satellite Television Systems and Travel Packages:

(1)   Evidence of defendant Roderic Boling's and defendant Anna Boling's role in recording and distributing voicemails in the Summer of 2004 which concerned the installation of satellite television systems and travel packages.

(2)   Evidence of Roderic Boling's substantial experience and involvement, during the period of late 2003 through July of 2004, in arranging for the Telephone Broadcast Company ("TBC") to distribute voicemail messages which marketed satellite television and travel packages.

At trial, an important portion of this evidence will include certain voicemails Anna Boling recorded and Roderic Boling arranged to have TBC distribute, which concerned the marketing of satellite television and travel packages.[1]  Each of these voicemails appears to have contained

---

[1] As indicated in the Government's prior Rule 404(b) Motion, there will be evidence introduced at trial that the business relationship between Roderic Boling and Michael O'Grady included a history of substantial cash payments being made to TBC for the distribution of

3

certain misleading and false information which was used to facilitate the telemarketing sales pitch. In addition, these voicemails share other notable characteristics to the voicemails used to perpetrate the fraud charged in the Indictment. For example, Anna Boling used her voice to make the satellite and travel voicemails, as she did the fraudulent hoax voicemails charged in the Indictment, and caused them to be loaded onto the onebox system. Each of these voicemails was also distributed by TBC as arranged by Roderic Boling. The satellite and travel package voicemails will also provide the jury with critical evidence as to the identity of the voice in the fraudulent hoax voicemails described in the Indictment.

The following is a transcript of one of the satellite television package voicemails Anna Boling recorded and Roderic Boling arranged to have TBC distribute:

> Hey this is Laura from customer service, um, I've been trying to reach you to arrange for one of my installers to come by and install your new digital satellite TV system, um, it says here all of the costs of your equipment and delivery is free and it looks like you are getting free digital satellite TV receivers, a satellite TV mini disk, and a $49 credit toward your first month's bill. Oh, and your professional installation is also free there no cost to you at all. Um you're probably some sort of referral from a friend or family. Anyway, to schedule your satellite TV installation, press 9 now. Remember there is no cost to you so press 9 now. If you already received your system or you're no longer interested, press 8 now.

Although the satellite television package message conveys the impression that a satellite television system had already been ordered for the recipient of the call, and that the person is receiving this deal because he or she is "probably some sort of referral from a friend or family," the United States expects witness testimony at trial to establish that these satellite television

---

voicemail messages for a company partially owned by defendant Roderic Boling. The periodic cash payments TBC received for distributing voicemails for the company partially owned by Roderic Boling supplemented non-cash compensation TBC also received. The Government does not intend to argue at trial that the cash payments to TBC were unlawful or improper.

package voicemails were classic cold calls to lists of telephone numbers that were not generated from friends or family referrals. Moreover, the United States expects testimonial evidence to establish that orders had not been generated for the individuals called prior to their receiving the voicemail message.

The travel package voicemails are similarly misleading. The following is a transcript of one of the travel package voicemails Anna Boling recorded and Roderic Boling arranged to have TBC distribute:

> Hi this is Jane with Online Reservations. You or a family member has filled out an on-line form. You've been selected to receive First Class accommodations for four days and three nights in sunny Orlando Florida! Near the world famous Walt Disney World. Please press 9 now to hear all the details and mention reservation code "Fun 278." While you are here you will receive two complimentary passes to Walt Disney World then spend three relaxing days and two nights on Daytona's beautiful golden beaches. It's only $99 per person and kids under 18 stay free! Please press 9 now and use reservation code "Fun 278." This code is only good for 24 hours and that code again is "Fun 278" that is F-U-N-2-7-8. Please press 9 now. If you would like to be removed from our call list, please press 8 now.

Although the travel package message represents that the recipient is receiving the call because his/her friend or family member filled out an online form and he/she has been selected to receive a travel package, the United States expects the testimony at trial to establish that, as with the satellite television package messages, these travel package voicemails were classic cold calls to lists of telephone numbers that were not generated from forms that had been completed by the person being called. As with the other calls, a fictitious name is used (not Anna), and a fictitious organization is identified (Online Reservations).

Absent defendants opening the door to the legality issue, the United States does not intend to argue in its case-in-chief that these satellite television and travel package messages

5

were illegal under state and federal consumer protection laws. However, the United States does intend to point out the defendants' use of false pretenses and misleading information to market the travel packages and satellite television packages, which is part of the modus operandi the defendants utilized to a much larger degree in the fraudulent hoax stock voicemails. The evidence at trial concerning these voicemails will be extremely brief. As can be seen above, the voicemails are extremely short. The witness testimony will also be brief and will come from witnesses who will already be testifying in the Government's case in chief.

> B. **Evidence of Defendant Jeffrey S. Mills' Involvement In Efforts To Promote Other Publicly Traded Companies.**

The United States intends to introduce evidence in its case in chief of defendant Jeffrey Mills' involvement in promoting or arranging to promote the following other publicly traded companies: Moneyflow Systems International, Inc. ("MFLW"); Wholefood Farmacy Corp. ("WFMC"); Medical Home Products, Inc. ("MHPD"); and FP Group, Ltd. ("FPGR").[2] As will be described further below, several of these promotions involved the use of faxes and/or emails to recommend that recipients purchase the promoted securities. In the case of MFLW, WFMC, and FP Group, Ltd., the Government anticipates that the evidence will show that Mills' company Direct Results of Sweetwater received significant amounts of stock prior to the promotions at issue, and that Direct Results sold significant amounts of this stock. Based upon the evidence the Government presently has in its possession, the Government does not intend to argue in its

---

[2] In an effort to streamline its case, the Government has determined that it will not present evidence in its case in chief concerning defendant Jeffrey Mills' involvement in promoting the following securities: Global Triad, Inc. ("GTRD"); 2-Track Global, Inc. ("TOTG"); Voice Diary, Inc. ("VDYI"), or Insights SVC Corp. ("ISIC").

case-in-chief that defendant Mills' conduct concerning WFMC, FPGC, and MHPD was illegal.[3] However, the Government does intend to argue that the evidence of Mills' promotional conduct in attempting to use stock promotion to increase the price of these stocks so that he could sell the stock during the promotion at increased prices constitutes powerful evidence of the defendant's motive, intent, knowledge, lack of mistake and modus operandi.

### 1. Moneyflow Systems International, Inc.

The Government expects to introduce evidence at trial that defendant Mills was hired to do a fax blast/email campaign promoting the stock of MFLW in or about the period of late January through May 2005. The Government anticipates the evidence will show that Mills' company Direct Results received approximately 100,000 shares of MFLW on January 28, 2005, and an additional 150,000 shares in February 2005. Emails from defendant Mills, and witness testimony will be introduced to establish that Mills created a tout sheet for MFLW, and caused it to be distributed by fax/email. Defendant Mills' emails reflect that a goal of the promotion was to increase the price of the stock. Defendant Mills' emails will also be introduced to show that during late March 2005, Mills expressed frustration that the promotional efforts were not being effective in increasing the price of MFLW stock, and that he was slowly buying stock to try to move the price of the stock up. The account statements of the Direct Results brokerage account corroborate that Mills was buying stock during this period. The Government intends to argue that Mills' stock purchases for the purpose of artificially increasing the price of MFLW stock constituted a Rule 404(b) bad act which is relevant to show motive, intent, knowledge and

---

[3]Should defense counsel open the door during cross examination or specifically put this issue before the court during the defense case, the United States reserves the right to argue illegality.

modus operandi in this case. See United States v. Russo, 74 F.3d 1383, 1391-1392 (3rd Cir. 1996)(short sales undertaken to create false impression of demand for the stock and to shield the prices from the realities of the market were integral to market manipulation scheme). The Government does not, however, intend to argue in it's case in chief that distribution of the MFLW tout sheet was an illegal bad act.

### 2.    Wholefood Farmacy, Corp.

The Government anticipates introducing evidence at trial that defendant Mills was hired to do a fax blast/email campaign promoting the stock of WFMC in or about January and February 2005. Defendant Mill's company Direct Results received approximately 150,000 shares of WFMC stock on or about January 20, 2005. Shortly thereafter, defendant Mills caused a tout sheet called the Outperformer, which promoted the stock of WFMC, to be distributed via fax/email to prospective investors. The tout sheet proclaimed that WFMC was a leader in the health and wellness industry, and projected a short term price target of $2.50 and a long term price target of $7.50. Nothwithstanding the bold projections in the tout sheet, since the time of November 2004, the stock price for WFMC has never exceeded $.86 cents. The tout sheet contained a disclosure that Direct Results had received 150,000 shares of stock to create the report, and that Direct Results may sell securities of WFMC. The Direct Results account sold a large amount of WFMC shares during January and February 2005. Evidence of this stock promotion is relevant to show defendant Mills' intent, knowledge, motive lack of intent, and modus operandi in promoting stock and selling it for profit after taking actions to increase the stock price.

### 3. FP Group, Ltd.

The United States intends to introduce evidence at trial that defendant Mills was involved in a promotion campaign for the stock of FP Group, Ltd. in or about the period June 2005 through September 2005. On or about June 16, 2005, defendant Mills' company Direct Results received 200,000 shares of FP Group, Ltd. The Government intends to introduce a tout sheet promoting FP Group, Ltd., that defendant Mills sent to a representative of FP Group, Ltd., in late August. The tout sheet disclosed that Direct Results had received 100,000 shares of FPGR stock and $20,000 to publish and disseminate the report on FPGR, which appears to be inaccurate given that Direct Results received 200,000 shares of FPGR in June 2005. Mills' company Direct Results sold a significant number of FPGR shares in September 2005. Although Mills' inaccurate disclosure in the FPGR report is problematic, the United States does not intend to argue in its case in chief that Mills' promotion of FPGR was illegal.[4]

### 4. Medical Home Products, Inc.

The United States intends to introduce evidence that in or about the period August through September 2004, defendant Mills had discussions with a principal of MPHD concerning a promotional campaign for MHPD. During the search of Mills' house, a handwritten script was recovered which recommends the purchase of MHPD stock, touting that the last recommendation VDYI was up over 400%, and that this hot current recommendation is the same principle. Mills had discussions with the principle of MHPD about a voicemail promotion for Maui General Stores, Inc. ("MAUG"), which Mills claimed had been very successful. The

---

[4]The United States reserves the right to make such arguments if defendant Mills opens the door to this issue.

Government does not intend to argue in its case-in-chief that Mills' involvement in trying to arrange the promotion of MHPD constituted illegal conduct or a bad act under Rule 404(b). Rather, the Government intends to introduce the evidence to establish the defendant's state of mind, intent, knowledge, lack of mistake and motive.

### III.    CONCLUSION

For the reasons set forth in the United States' initial motion papers and set forth herein, as well as such reasons that may be stated orally at any hearing, the United States respectfully requests that it's Motion *in Limine* to Introduce Inextricably Intertwined Evidence, and Evidence of Other Acts Pursuant to Fed. R. Evid. 404(b) be Granted and that the United States be permitted to introduce at trial the evidence generally described in this Motion and Memorandum.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

By:      _____/s/_____
TEJPAL S. CHAWLA
D.C. Bar No. 464012
Jonathan R. Barr
D.C. Bar No. 437334
Assistant U.S. Attorneys
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-2442 (Chawla)
(202) 514-9620 (Barr)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this 4th day of May 2007 caused a copy of the United States' Supplemental Memorandum in Support of Motion *In Limine* to Introduce Inextricably Intertwined Evidence, and Evidence of Other Acts Pursuant to Fed.R.Evid. 404(b) to be served on the following counsel via ECF:

> AUSA Tejpal Chawla, Esq.
> Thomas Abbenante, Esq.
> Leslie S. McAdoo, Esq.
> Robert Switzer, Esq.

_____
JONATHAN R. BARR
ASSISTANT U.S. ATTORNEY